IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Newport News Division)

FILED

MAR - 5 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| SDV SOLUTIONS, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 4:14cv27 |
| ANACAPA MICRO PRODUCTS, INC., <br> Serve: The Honorable Janet Vestal Kelly, <br> Secretary of the Commonwealth <br> Office of the Secretary of the Commonwealth, <br> Service of Process Department <br> 1111 East Broad Street, 4th Floor <br> Post Office Box 2452 <br> Richmond, Virginia 23218-2452 | |
| Defendant. | |

## COMPLAINT

Plaintiff SDV Solutions, Inc., for its complaint against defendant Anacapa Micro Products, Inc, states as follows:

### NATURE OF ACTION

1.  By this action, plaintiff SDV Solutions, Inc. ("SDV") seeks to prevent defendant Anacapa Micro Products, Inc. ("Anacapa") from engaging in unlawful conduct, which, if permitted, would result in SDV losing a valuable contract supporting the U.S. Citizenship and Immigration Services ("USCIS") under Solicitation No. HSSCCG-14-R-00013, thereby causing it immeasurable and irreparable harm. Moreover, Anacapa, by intentionally misrepresenting that it would include SDV's proposal and pricing in its proposal to USCIS, fraudulently induced SDV to enter into a Teaming Agreement and provide Anacapa with SDV's confidential

information. Such fraudulent action will also cause SDV irreparable harm. Further, by obtaining SDV's confidential and proprietary information by improper means, Anacapa has misappropriated and converted SDV's trade secrets and confidential and proprietary information. Such misappropriation of SDV's trade secrets will cause SDV irreparable harm.

2. As further detailed below, SDV requests that this Court enjoin Anacapa from the conduct that will cause such immeasurable and irreparable harm. SDV also seeks an award of compensatory and punitive damages for the harm caused by Anacapa, including attorney's fees.

## PARTIES

3. Plaintiff SDV Solutions, Inc. is a Virginia corporation with its principal place of business at 8105 Richmond Road, Suite 205, Toano, VA 23168

4. Defendant Anacapa Micro Products, Inc. is a California corporation with its principal place of business at 2465 Portola Road, Ventura, CA 93003.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over SDV's claims under 28 U.S.C. § 1332 because this action is one between citizens of different states. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Anacapa because it regularly does business and engages in other persistent courses of conduct in this district, including entering into a contract with SDV, located in the district.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to SDV's claims occurred in this district.

## FACTS[1]

8. For nearly 10 years, SDV has operated as a Service-Disabled, Veteran-Owned Small Business providing technology support, sales, and help desk support services to federal government agencies. Since 2004, SDV has offered an on-line catalog of technology products; and procurement, installation, warranty support, and removal services. SDV is based in Toano, Virginia and provides products and services throughout the United States, Japan, Korea, Bahrain, Qatar, Germany, United Kingdom and the Azores. SDV's customers include a number of federal agencies, including the Department of Homeland Security.

9. SDV and Anacapa are both awardees of a Department of Homeland Security's ("DHS") FirstSource II contract. The FirstSource II is an indefinite delivery/indefinite quantity contract, valued at $3 billion over seven years, that provides DHS agencies with a consolidated purchasing vehicle for computer hardware and software and related services from qualified small businesses. FirstSource II is the follow-on contract to the DHS's successful FirstSource strategic sourcing vehicle, a five-year, $2 billion contract launched in 2007.

10. Awards under FirstSource II were divided into five contractor "Functional Areas," or set-aside categories: historically underutilized business zone ("HUBZone"), 8(a), service-disabled, veteran-owned small business ("SDVOSB"), economically-disadvantaged, women-owned small business, and small business. DHS and its sub-agencies then issue Task Orders under the Contract requesting proposals from various set-aside categories.

11. SDV was awarded a contract under the SDVOSB category and Anacapa was awarded a contract under the HUBZone category. Seeking to maximize their opportunities under the FirstSource II contract vehicle, SDV and Anacapa entered into a Teaming Agreement.

---

[1] The facts herein are supported by the Declaration of Michael McMahan, Mar. 3, 2014, attached hereto as Exhibit H.

3

12. On or about January 8, 2014, the U.S. Citizenship and Immigration Services ("USCIS") issued a Solicitation, Request for Proposals No. HSSCCG-14-R-00013 (the "RFP") seeking proposals for "3rd party renewal of hardware repair services and maintenance of Dell Servers." (*See* Exhibit A, RFP.) Only holders in Functional Area HUBZone were permitted to respond.

13. By virtue of its other contracts with the USCIS, SDV had knowledge of USCIS's IT service needs. After issuance of the RFP, SDV reached out to Anacapa and offered to partner with Anacapa and provide a price and much of the writing for the proposal if Anacapa was willing to include SDV's solution, including information it had learned from its prior work at USCIS, and pricing in its proposal to USCIS and enter into a Subcontract after receipt of award. Anacapa agreed. SDV also provided Anacapa with questions to pose to USCIS, in an effort to clarify the requirements of the RFP. (Exhibit B, Questions.)

14. On or about January 10, 2014, SDV then asked Anacapa to enter into a second, more definite Teaming Agreement to memorialize the parties' agreement with regard to this specific opportunity ("Teaming Agreement"). (Exhibit C, Teaming Agreement.) Initially, Anacapa felt that a second Teaming Agreement was not necessary, but on January 10, 2014, Anacapa's Vice President, Mr. Glenn Anderson, participated in a telephone conference with SDV's President, Mr. Michael McMahan, where Mr. McMahan explained that SDV required a more specific Teaming Agreement, with more definitive requirements and pricing, for this particular scope of work under the RFP. In that telephone conference, Mr. Anderson represented that Anacapa would agree to include SDV's solution and pricing in its proposal and would enter into a Subcontract with SDV if awarded the contract, and subsequently executed the Teaming Agreement on January 10, 2014 and delivered it back to SDV via email.

15. The Teaming Agreement unambiguously required Anacapa to use SDV's pricing and solution in its proposal submitted to USCIS under the RFP. Paragraph 3 of the Teaming Agreement provides the following:

> The Prime will submit all proposals to the Customer. The Subcontractor will submit all Customer price quotations to the Prime. The Prime will submit a summarized proposal to the Customer that includes the Subcontractor's work. The Prime reserves the right to pass through or to mark up the Subcontractor's pricing to the Customer. **The Prime, in any proposal which it submits and in all discussions with respect thereto, will identify the Subcontractor, and will state in such proposal or discussions the relationship of the parties and the areas of endeavor, tasks and responsibility of the subcontractor as set forth in the attached EXHIBIT A.** Changes to EXHIBIT A will be accomplished as mutually agreed to by the parties in writing. If the Parties' efforts result in the award of a prime contract for the Program to Prime, the Prime will negotiate a mutually acceptable subcontract under such prime contract (the "Subcontract").

(Exhibit C, ¶ 3 (emphasis added).)

16. Paragraph 3 of the Teaming Agreement is a material part of the Teaming Agreement; SDV would not have entered into this Teaming Agreement with Anacapa, and most importantly, would not have provided its Proprietary Information to Anacapa, without assurances that Anacapa would submit a proposal to USCIS that "identifies [SDV], and will state in such proposal or discussions the relationship of the parties and the areas of endeavor, tasks and responsibility of [SDV]."

17. Over the years, through the expenditure of substantial time and money, SDV has developed a price list and proprietary information for use in proposals to federal agencies, including USCIS. All of the information described in this paragraph is maintained on SDV's password protected computer network and subject to reasonable efforts to maintain the secrecy and confidentiality of this information.

18. Access to the information listed above is limited to authorized users of SDV's computer network and further limited to those SDV employees who have a legitimate business

need to access the computer programs and applications outlined above and the confidential, proprietary information contained therein.

19. In order to further protect the confidential and proprietary business information maintained on its computer network and computer systems, SDV does not release information without entering into agreements to protect and keep confidential that confidential, proprietary information, like the provisions set forth in Paragraph 8 of the Teaming Agreement.

20. The Teaming Agreement provides that Anacapa would not use SDV's confidential, proprietary information for any purpose other than for use in the proposal to USCIS:

> Each party agrees not to use the disclosing party's Proprietary Information for any purpose other than preparation and submission of a proposal or proposals under this Agreement and performance of any contracts resulting therefrom. Any other use or disclosure of such Proprietary Information, including disclosure to other proposed subcontractors, shall be made only upon the prior written consent of the disclosing party.

(Exhibit C, ¶ 8).

21. Immediately after receiving a signed Teaming Agreement from Anacapa on January 10, 2014, SDV provided Mr. Anderson at Anacapa with its confidential and proprietary pricing, as well as confidential and proprietary information for use in Anacapa's proposal relating to the deliverables requested by USCIS in its RFP, including confidential information and pricing learned from SDV's performance on another contract at USCIS. (Exhibit I.)

22. Upon information and belief, Anacapa timely submitted a proposal on January 13, 2014. On or about February 24, 2014, SDV was notified that Anacapa was the prospective awardee of a Prime Contract under the RFP, but at a total price that was nearly ▓▓▓▓ less than the competitive pricing provided by SDV to Anacapa. (Exhibit D, Notice of Award, Feb. 24, 2014.) Notably, Anacapa did not contact SDV regarding its proposal or SDV's Subcontract.

6

23. When SDV inquired several times about the status of its Subcontract, Anacapa responded with an email requesting a "final offer" from SDV on February 25, 2014. (Exhibit E, See Email from R. Riley to M. McMahan, Feb. 25, 2014.) After requesting an update on the status of its Subcontract, however, SDV was informed "[i]f your proposal is compliant and you're the lowest technical acceptable price, we will issue you the order. If not, we will not be issuing you the order. Will know by tomrw [sic] latest." (Exhibit F, Email from K. Marks to M. McMahan, Feb, 27, 2014.)

24. After asking Mr. Marks to explain his prior statement, Mr. Marks responded that SDV's initial pricing was "not considered":

> Mike, this is a competitive situation. Your initial pricing was not considered. We are open to consider your BAFO along with the other offers.

(Exhibit G, See K. Marks to M. McMahan, Feb, 27, 2014.)

25. On February 27, 2014, SDV demanded that Anacapa inform SDV by February 28, 2014, whether Anacapa complied—and intends to comply—with the Teaming Agreement, and in accordance with Paragraph 3, identified SDV and the relationship between the parties in its proposal submitted to USCIS and in all discussions with respect thereto, and intends to award a Subcontract based on SDV's quote provided to Anacapa on January 10, 2014. (Exhibit F, Demand Letter.)

26. On March 1, 2014, counsel for Anacapa informed counsel for SDV that he believed that Anacapa was in the process of or had already entered into a Subcontract with a third party.

27. Upon information and belief, work on the Task Order is set to begin on March 1, 2014.

28. Absent immediate judicial intervention, SDV will suffer injury that is irreparable, immeasurable, and for which money damages are inadequate.

## COUNT I
### *(Breach of Contract)*

29. SDV repeats and realleges the allegations of paragraphs 1 through 28 as though fully set forth herein.

30. The Teaming Agreement was a valid and enforceable contract between SDV and Anacapa.

31. In exchange for receipt of SDV's proprietary and confidential information, Anacapa agreed to include SDV's solution and pricing in its proposal to USCIS.

32. The Teaming Agreement also required Anacapa to negotiate in good faith with SDV the terms of the subcontract agreement.

33. Anacapa materially breached the Teaming Agreement by failing to include SDV's solution and pricing in its proposal to USCIS, and breached the implied duty of good faith and fair dealing by its failure to engage in any effort to negotiate and execute a subcontract with SDV.

34. SDV has been damaged by Anacapa's material breaches of contract in the amount of at least ▮▮▮▮▮▮▮▮

## COUNT II
### *(Fraud in the Inducement)*

35. SDV repeats and realleges the allegations of paragraphs 1 through 28 as though fully set forth herein.

36. On January 10, 2014, Mr. Glenn Anderson, Vice President of Anacapa, falsely represented to SDV that it would team with SDV on a project for the RFP and that it would

8

propose SDV's solution and pricing in any bid for the task order at issue, and would award a Subcontract to SDV if Anacapa was awarded the contract.

37.    SDV reasonably relied on those representations in deciding to enter into the Teaming Agreement, as well as in deciding to provide Anacapa with the information relating to the deliverables requested by USCIS in its RFP, including confidential information and pricing learned from its performance on another contract at USCIS, necessary to allow Anacapa to bid successfully on the prime contract from USCIS.

38.    Anacapa's representations to SDV that it would include SDV's solution and pricing in its proposal, and that it would, upon award of the prime contract, issue a Subcontract to SDV were false when made. Those misrepresentations were made with the intention of inducing SDV to enter into the Teaming Agreement to provide its confidential information and pricing to Anacapa. Without the false misrepresentation of this material fact, SDV would not have provided its confidential information and pricing to Anacapa.

39.    Upon information and belief, Anacapa did not intend to use SDV's pricing in its proposal to USCIS and did not intend to provide SDV with a subcontract.

40.    Anacapa asserted false statements of fact, fraudulently induced SDV to enter into a Teaming Agreement to provide Anacapa with its confidential information and insight learned from SDV's prior work at USCIS. and then refused to make any effort to negotiate a subcontract agreement.

41.    SDV has been damaged as a result of Anacapa's fraud in the amount of at least ▮▮▮▮▮▮

## COUNT III
### *(Constructive Fraud in the Inducement)*

42. SDV repeats and realleges the allegations of paragraphs 1 through 28 as though fully set forth herein.

43. On January 10, 2014, Mr. Glenn Anderson, Vice President of Anacapa, falsely represented to SDV that it would team with SDV on a project for the RFP and that it would propose SDV's solution and pricing in any bid for the task order at issue, and would award a Subcontract to SDV if Anacapa was awarded the contract.

44. SDV reasonably relied on those representations and entered into the Teaming Agreement, as well as provided Anacapa with the information relating to the deliverables requested by USCIS in its RFP, including confidential information and pricing learned from its performance on another contract at USCIS, necessary to allow Anacapa to bid successfully on the prime contract from USCIS.

45. Anacapa's representations to SDV that it would include SDV's solution and pricing in its proposal, and that it would, upon award of the prime contract, issue a Subcontract to SDV were false when made. Those misrepresentations were made innocently and/or negligently, with the purpose of inducing SDV to provide its confidential information and pricing to Anacapa. Without the false misrepresentation of this material fact, SDV would not have provided its confidential information and pricing to Anacapa.

46. Anacapa did not intend to use SDV's pricing in its proposal to USCIS and did not intend to provide SDV with a subcontract. Upon information and belief, Anacapa made these false statements and induced SDV to enter into the Teaming Agreement for the purpose of obtaining SDV's confidential information and pricing.

47. Anacapa asserted false statements of fact, fraudulently induced SDV to enter into a Teaming Agreement, provide Anacapa with its confidential information and insight learned from SDV's prior work at USCIS assist Anacapa in procuring the prime contract, and then refused to negotiate in good faith a subcontract agreement.

48. SDV has been damaged as a result of Anacapa's fraud in the amount of at least ███████.

## COUNT IV
### (Unjust Enrichment)

49. SDV repeats and realleges the allegations of paragraphs 1 through 48 as though fully set forth herein.

50. SDV conferred a benefit on Anacapa when it provided Anacapa with its confidential information and pricing learned from its performance on another contract at USCIS, and when it provided its experience and expertise in preparing the response to the RFP.

51. Anacapa accepted or retained the benefit of SDV's experience and expertise, its confidential information learned from its prior performance at USCIS, and its pricing without paying for its value.

52. SDV had a reasonable expectation of payment in return for providing its confidential information and pricing learned from its performance on another contract at USCIS, and Anacapa knew that SDV expected payment in return for providing its confidential information and pricing to Anacapa.

53. Anacapa's acceptance and retention of those benefits without payment is inequitable.

54. The reasonable value of the confidential information and pricing provided to Anacapa is ▮▮▮▮▮▮▮, and SDV has been damaged as a result of Anacapa's failure to pay for the benefit it received in the amount of at least ▮▮▮▮▮▮▮.

## COUNT V
### (Violations of the Virginia Uniform Trade Secrets Protection Act
### (Va. Code Ann. § 59.1-336 et seq.))

55. SDV repeats and realleges the allegations of paragraphs 1 through 54 as though fully set forth herein.

56. Anacapa has violated the Virginia Trade Secrets Protection Act, Virginia Code § 59.1-336 *et seq.*, by obtaining SDV's confidential information by misrepresentation and therefore misappropriating SDV's trade secrets. Anacapa knew at the time they received SDV's trade secrets that SDV provided them in reliance on Anacapa's misrepresentations, that the trade secrets were obtained by Anacapa by improper means, and that SDV did not consent to Anacapa's improper means of obtaining SDV's trade secrets or reasons inimical to SDV's legitimate business purposes.

57. Under Virginia Code § 59.1-337, the Court has the authority to issue an injunction against any actual or threatened misappropriation of trade secrets. Anacapa should be permanently enjoined from any further use of SDV's trade secrets and directed to return and any and all trade secret information that was illegally misappropriated.

58. Under Virginia Code § 59.1-338, SDV is entitled to an award of both its actual damages and the unjust enrichment caused by misappropriation that is not accounted for in computing actual loss.

59. Anacapa's actions were willful and malicious, justifying an award of punitive damages and attorneys' fees under Virginia Code § 59.1-338.1.

60. As a direct and proximate result of Anacapa's violation of the Trade Secrets Protection Act, SDV has been damaged in an amount to be determined by the evidence at trial, but not less than ▮

### COUNT VI
### *(Conversion)*

61. SDV repeats and realleges the allegations of paragraphs 1 through 60 as though fully set forth herein.

62. By misappropriating SDV's confidential and trade secret information and SDV's pricing, Anacapa has converted SDV's property for their own use and purposes and, as a result, have damaged SDV.

63. As a direct and proximate result of Anacapa's wrongful actions, SDV has been damaged in an amount to be determined by the evidence at trial, but not less than ▮

### Count VII
### *(Preliminary and Permanent Injunction)*

64. SDV repeats and realleges the allegations of paragraphs 1 through 63 as though fully set forth herein.

65. Absent judicial intervention, SDV will suffer irreparable harm.

66. The harm that SDV will suffer if this motion is not granted outweighs the harm to Anacapa if the injunction is granted. This contract is very valuable for SDV and constitutes a significant source of SDV's revenue. SDV is a small, service-disabled, veteran-owned business. If the motion is denied, SDV will suffer significant, irreparable harm including the potential loss of personnel and loss of substantial revenue.

67. By comparison, Anacapa will suffer no harm. Instead, Anacapa will be required to perform in accordance with the Teaming Agreement. Upon information and belief, it has not

begun performance on the Prime Contract. Indeed, the relief sought simply would enjoin wrongful actions and return the parties to the status quo before Anacapa breached the Teaming Agreement. Therefore, granting SDV's motion will not in any way affect the current performance obligations.

68. Based upon Anacapa's continued breach of the Teaming Agreement, SDV has no adequate remedy at law and will suffer irreparable harm, including the lost opportunity to compete fully and fairly for award and the loss of a valuable subcontract, if Anacapa is allowed to enter or perform under a subcontract with a third party..

69. Based upon SDV's likelihood of success on the merits, the fact that the harm to SDV will substantially any harm to Anacapa, and the public interest in the protection of trade secrets, fair dealing, and the solemnity of contracts, SDV has satisfied the prerequisites for injunctive relief.

70. Therefore, a preliminary and/or permanent injunction is necessary to remedy Anacapa's breaches of the Teaming Agreement, and to prevent SDV from entering into a subcontract or performing on the contract with a third-party subcontractor, and require Anacapa to perform in accordance with the Subcontract.

WHEREFORE, this Court should enter judgment in favor of SDV Solutions, Inc. and against Anacapa Micro Products, Inc. as follows:

(1) Enjoining Anacapa from entering into or performing under a Subcontract with any third party to perform work under Solicitation No. HSSCCG-14-R-00013; and requiring Anacapa to enter into good faith negotiations with SDV for the execution of a Subcontract in accordance with the Teaming Agreement;

(2) Enjoining Anacapa from any further use of SDV's confidential information and requiring Anacapa to return or destroy that confidential information in its possession;

(3) Award damages in excess of ▮▮▮▮▮ against Anacapa;

(4) Award punitive damages against Anacapa;

(5) Award attorney's fees and costs;

(6) Award prejudgment and post-judgment interest; and

(7) Award such other relief as the Court deems necessary and proper.

**JURY TRIAL DEMANDED.**

Dated: March 5, 2014

SDV Solutions, Inc.

By: _____
Of Counsel

Thomas A. Coulter (VSB No. 46532)
Nicole Hardin Brakstad (VSB No. 74963)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 545-1516
Telephone: (804) 783-2003
Facsimile: (804) 783-2294
Email: thomas.coulter@leclairryan.com
Email: nicole.brakstad@leclairryan.com

Robert Wm. Best (VSB No. 72077)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
999 Waterside Drive, Suite 2100
Norfolk, Virginia 23510
Telephone: (757) 441-8908
Facsimile: (757) 624-3773
Email: robert.best@leclairryan.com

*Attorneys for Plaintiff, SDV Solutions, Inc.*